UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES R. YOUNG,

      Plaintiff,

v.                     Case No: 5:13-cv-609-Oc-29PRL

THE UNITED STATES OF
AMERICA, MS. STORY, Medical
Specialist, R. CARVER, M.D.,
and J. CACHO, MLP,

      Defendants.

---

### OPINION AND ORDER

This matter comes before the Court on the following:

> Plaintiff James R. Young's ("Plaintiff's") Motion for Summary Judgment (Doc. 74, filed September 25, 2015);

> Defendants' Opposition to Plaintiff's Motion for Summary Judgment (Doc. 81, filed November 20, 2015);

> Defendants' Motion for Summary Judgment (Doc. 75, filed September 28, 2015); and

> Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 82, filed November 23, 2015).

As discussed below, the Court concludes that each defendant is entitled to judgment as a matter of law on Plaintiff's claims. Plaintiff's motion for summary judgment is denied.

## I.  Procedural History

Plaintiff, a federal prisoner at the Coleman Medium Federal Correctional Institution in Coleman, Florida, initiated this

action by filing a complaint against the United States of America, the United States Department of Justice, the Federal Bureau of Prisons, Medical Specialist Michelle Story, Psychologist Smith, Doctor Robert Carver, MLP Jamie Cacho, Lieutenant Ramos, and Officer Trimble (Doc. 1, filed December 11, 2013). Plaintiff raised claims pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, et seq.

On December 19, 2013, this Court conducted a detailed initial screening of the complaint pursuant to 28 U.S.C. § 1915A (Doc. 6). The Court concluded that Plaintiff had not stated a viable Bivens claim against any of the named defendants. Id. at 7-13. However, Plaintiff was given leave to file an amended complaint raising Bivens claims against medical defendants Story, Cacho, and Carver due to their alleged failure to treat Plaintiff's head trauma and to provide adequate pain medication. Id. at 17. The Court also concluded that an issue of fact remained as to whether personnel at the prison had violated a mandatory BOP regulation, guideline, or policy when they placed Plaintiff and another inmate in the same cell. Id. at 16. Accordingly, Plaintiff's FTCA claims were allowed to proceed. Id.

Plaintiff filed an amended and a second amended complaint (Doc. 10; Doc. 19). On October 24, 2014, Defendants filed a motion to dismiss the second amended complaint (Doc. 43). Plaintiff's

FTCA claims based upon any defendants' medical negligence were dismissed as unexhausted as were Plaintiff's FTCA claims for punitive damages (Doc. 52).  Defendants Story, Carver, Cacho, and the United States of America are the only remaining defendants in this action.

## II.  __Complaint__

In his second amended complaint, Plaintiff alleges that on August 16, 2012, he was accidentally kicked by fellow inmate Wade Walters ("Walters"), resulting in a painful lump on Plaintiff's forehead (Doc. 19 at 9). The physical contact with Walters was not the result of an altercation; rather Walters was sleeping, and Plaintiff was kicked because he checked on Walters when it sounded as if Walters was choking. Id.  Earlier in the evening, Walters had needed to be restrained by prison staff. Id.

Plaintiff asserts that Walters was prone to "violent, incoherent fits during his sleep" and, five days before Plaintiff was kicked, the psychology department had increased Walters' medication dosage to aid with the fits (Doc. 19 at 9). Plaintiff spoke with prison staff members prior to the incident, but all of his requests to have Walters moved to a separate cell were denied. Id.  Plaintiff told a staff psychologist that Walters needed to be moved and she told Plaintiff that Walters' medication dosage was being increased to assist with his "personal fits and hearing

voices," but that he would not be moved, and she refused to make a request on Plaintiff's behalf. Id.

On October 16, 2012, two months after he was kicked, Plaintiff was examined by Defendant Medical Specialist Story (Doc. 19 at 9). Plaintiff told Defendant Story that the lump on his head was sore to the touch and that it caused him headaches. Id. at 10. Plaintiff requested that he see a specialist and have a CT scan done to check for internal damage. Id. Even though Defendant Story told Plaintiff that he would be seen again, he was not seen by the medical department until he was released from SHU and submitted a sick call request. Id. Defendant Story did not prescribe pain medication to Plaintiff. Id.

On September 19, 2012, Plaintiff was examined by Defendant Cacho who authorized that Plaintiff receive pain medication, but did not suggest that anything further be done to actually treat his contusion or to see if Plaintiff had suffered an internal brain injury (Doc. 19 at 10). The pain medication was ultimately discontinued after a year. Id.

Following Plaintiff's release from SHU, he was examined by Defendant Carver on several occasions and was told that he would be seen by a specialist (Doc. 19 at 11). Plaintiff did see a specialist to address other injuries received when he slipped and fell in the shower, but the therapist did not address or treat Plaintiff's head lump. Id. Defendant Carver also prescribed pain medication for Plaintiff which was ultimately discontinued.

Because of the kick from Walters and the denial of treatment for the resulting lump, Plaintiff alleges that he has "constant, severe headaches with the contusion still on his forehead." (Doc. 19 at 12). He seeks compensatory and punitive damages. Id. at 13.

## III.  Motions for Summary Judgment

Plaintiff filed a motion for summary judgment on September 25, 2015 in which he asserts that he is entitled to relief as a matter of law (Doc. 74).   In his motion, Plaintiff complains about Defendants' response to his single discovery request, and attaches a letter from the United States Department of Justice denying his administrative FTCA claim (Doc. 74 at 23).

In response to Plaintiff's motion for summary judgment, Defendants filed the Declaration of Jamie Cacho (Doc. 81-1) and the Declaration of Francisco Mari-Lassalle (Doc. 81-2).[1]

---

[1] Plaintiff's complaints regarding the defendants' responses to his discovery requests were already raised in his September 8, 2015 "Motion to Request for Denial of Objections Made by the United States" (Doc. 70).  The arguments were addressed and rejected by this Court:

> Plaintiff does not appear to actually seek Rule 34(a) discovery.  Instead, he asks for the Defendants' "side of testimony" and appears to seek witness affidavits and deposition testimony that the defendants intend to present at trial. . . .
>
> Under Fed. R. Civ. P. 26(a)(3), a party must disclose the evidence that it may present at trial at least 30 days before trial. Fed. R. Civ. P. 26(a)(3)(B).  However, because there is not a trial date currently set, the defendants are correct in their assertion that Plaintiff's request for these disclosures is

Defendants filed a motion for summary judgment on September 28, 2015 (Doc. 75).  In the motion, Defendants assert that Defendants Storey and Carver are absolutely immune from Plaintiff's <u>Bivens</u> claim; Defendants Storey, Carver, and Cacho have qualified immunity from Plaintiff's <u>Bivens</u> claims; The United States was not negligent in failing to protect Plaintiff's safety; and the discretionary function exception precludes Plaintiff's FTCA claim (Doc. 75 at 7-18).  In support of the motion for summary judgment, Defendants filed a Certification of Records by Caixa Santos; numerous grievances filed by Plaintiff; a Declaration of Michelle (Storey) Brown ("Storey Declaration"), R.N.; Plaintiff's medical records relating to the

---

premature. <u>See, e.g.</u>, <u>Banks v. Office of Senate Sergeant-at-Arms</u>, 222 F.R.D. 7, 15 (D.D.C. 2004) (denying interrogatory request for witness names and summaries as premature in light of Rule 26(a)(3) which only requires the names of witnesses expected to testify at trial 30 days in advance of the trial date as well as violative of the work product doctrine; <u>Hernandez-Torres v. Inter-Continental Trading, Inc.</u>, 158 F.3d 43, 49 (1st Cir. 1998) (Rule 26(a)(3) does not require disclosure of a prospective witness' identity during the discovery period).

(Doc. 77 at 3-4).  Petitioner now repeats his argument that "none of the Defendants, nor Defendants' counsel have ever attempted to present records, depositions, or counter-affidavits, to refute Plaintiff's arguments; affidavits' or records; that summary judgment should be granted in the Plaintiff's favor as a matter of law. *See* F.R. Civ. P. Rule 56(c)." Because the assertions in Plaintiff's motion for summary judgment have already been thoroughly considered and rejected by the Court in its prior order (Doc. 77), and Plaintiff has presented no additional evidence in support of such claims, no further consideration will be given to Plaintiff's motion for summary judgment.

injury; a Declaration of Robert Carver, M.D. ("Carver Declaration"; and a Declaration of Nicolle Schwartz, Psy.D. ("Schwartz Declaration") (Doc. 75-1; Doc. 75-2; Doc. 75-3; 75-4).

In response to Defendants' motion for summary judgment, Plaintiff filed copies of grievances, regulations, and the same medical records provided by Defendants (Doc. 82 at 27-60); Record of Sworn Affidavit (Doc. 83); "Notice of Defendant's Failure to Participate in Motion for Summary Judgment" (Doc. 84); Plaintiff's Declaration Response to the Declaration of Michelle (Storey) Brown, R.N. (Doc. 85); Plaintiff's Declaration Response to the Declaration of Robert Carver, M.D. (Doc. 86); and Plaintiff's Declaration Response to the Declaration of Nicolle Schwartz, Psy.D. (Doc. 87).

## VI.   **Legal Standards**

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

_Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986).   The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof.   _Celotex_, 477 U.S. at 322-324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. _Avirgan v. Hull_, 932 F.2d 1572, 1577 (11th Cir. 1991).   Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." _Celotex_, 477 U.S. at 322, (1986).

## V.   Analysis

### A.   The United States is entitled to summary judgment on Plaintiff's FTCA claim

Plaintiff asserts that the prison was negligent for placing him in the same cell as Walters.   Specifically, he argues

> Plaintiff's complaint is that on August 16, 2012, he was kicked in the forehead by fellow inmate Wade Walters and received a lump on the head as a result.   The physical contact with Walters was not the result of an altercation; rather Walters was sleeping, and Plaintiff was kicked when he went to check on Walters

because it sounded as if he was choking. Plaintiff asserts that Walters was prone to violent incoherent fits during his sleep and five days before Plaintiff was kicked, the psychology department had increased the medication dosage for Walters to aid with the fits. Plaintiff further states that he spoke with BOP Officer Trimble and Lt. Ramos prior to the incident, but all of his requests to have Walters, or himself moved to a separate cell were denied. Plaintiff told Dr. Smith, Walters' psychology care provider, that Walters needed to be moved, and she told Plaintiff that Walters' medication dosage was being increased to assist with his "personal fits and hearing voices," but that he would not be moved, and she refused to make a request on Plaintiff's behalf with the SHU housing staff.

(Doc. 19 at 9). Defendants argue that the discretionary function exception to the FTCA precludes this Court from considering this claim (Doc. 75 at 16).

The United States is immune from suit unless it has consented to be sued, and its consent to be sued defines the terms and conditions upon which it may be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). The FTCA provides that the United States may be held liable for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. § 1346(b)(1); Turner ex rel. Turner v. United States, 514 F.3d 1194, 1203 (11th Cir. 2008). Thus, the

"FTCA is a specific, congressional exception" to the United States' sovereign immunity. Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994). As such, the waiver of sovereign immunity permitted under the FTCA "must be scrupulously observed, and not expanded, by the courts." Id.

While the FTCA waives the United States' sovereign immunity from suit in federal courts for the negligent actions of its employees, this waiver of sovereign immunity is subject to several exceptions. Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998). "The discretionary function exception . . . precludes government liability for '[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" Id. (quoting 28 U.S.C. § 2680(a)). "If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction." Id.; see also U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009) (stating that "[w]hen the discretionary function exception applies, no federal subject matter jurisdiction exists").

The discretionary function exception "'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental

activities from exposure to suit by private individuals.'" <u>Cohen</u>, 151 F.3d at 1340 (quoting <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808 (1984)). This is so because to impose "liability on the government for its employees' discretionary acts 'would seriously handicap efficient governmental operations.'" <u>Id.</u> at 1340-41 (quoting <u>Varig Airlines</u>, 467 U.S. at 814). Thus, "even the negligent performance of a discretionary function does not subject the government to liability under the Federal Tort Claims Act." <u>Red Lake Band of Chippewa Indians v. United States</u>, 800 F.2d 1187, 1194 (D.C. Cir. 1986).

In order for a claim to fall within the discretionary function exception to the FTCA, it must meet two requirements. First, the challenged action must involve an element of judgment or choice. The discretionary element does not exist where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988) (internal quotation marks and citation omitted). In such event, the discretionary function exception does not apply because the employee has no rightful option but to adhere to the directive. <u>Id.</u>

Next, if an element of choice or judgment *is* involved, the court must determine whether that choice or judgment is of the kind that the discretionary function exception was designed to

shield. <u>United States v. Gaubert</u>, 499 U.S. 315, 322-23 (1991)).
The exception "protects only governmental actions and decisions
based on considerations of public policy." <u>Id.</u> at 323.

Plaintiff urges that the discretionary function exception
does not apply in this case because Walters should have been placed
in an observation cell (as opposed to Plaintiff's cell) on the day
the kick occurred (Doc. 82 at 3).  Plaintiff's asserts that "the
fact that Walters was even placed in the cell with Plaintiff after
coming to the SHU and making threats of suicide, was a deliberate
and direct choice made to violate BOP policy for these specific
situations and as well, a conscience decision to violate the law."
<u>Id.</u>  In support of his assertion, Plaintiff attaches § 552.42 of
the Code of Federal Regulations which requires that a prison: (1)
have "one or more rooms" designated specifically for housing an
inmate on suicide watch; (2) have staff or trained inmate observers
keep the suicidal prisoner under constant observation; and (3)
either remove the prisoner when he is no longer a suicide risk or
arrange for his transfer to a medical facility. 28 C.F.R. § 552.42
(Doc. 82 at 46).  Plaintiff also attaches an undated letter from
the Director of the Federal Bureau of Prisons expressing
appreciation to "Suicide Watch and Mental Health Inmate
Companions" (Doc. 82 at 47).[2]  Plaintiff does not provide any

---

[2] It is unclear why Plaintiff attached the latter.  There is
no allegation or indication that Plaintiff was acting as an inmate
companion at the time he was kicked.

evidence that Walter was actually on suicide watch at the time he accidentally kicked Plaintiff so that 28 C.F.R. § 552.42 would apply.

In support of their assertion that Walter's classification was a discretionary function, Defendants file the Declaration of Chief Psychologist Nicolle Schwartz (Doc. 75-4). Schwartz attests that mental health inmates are classified as having a mental health care level of 1-4, and if the inmate is not classified as requiring acute care in a psychiatric hospital (level four), the inmate is eligible for housing in the general population "and their cell assignments are determined the same as any other inmate." Id. at ¶ 3. Schwartz attests that neither Plaintiff nor Walters was classified as level four. Id. at ¶ 6. Plaintiff has provided no evidence to dispute Schwartz' statement. Accordingly, there is no genuine dispute that both inmates were eligible for housing in the general population, and the prison officials assigned Plaintiff and Walters to the same cell through the exercise of their discretion.

The second consideration is whether the prison officials' discretion was grounded in considerations of public policy of a kind that the discretionary function was designed to protect. Defendants have presented evidence that inmates are housed based upon their need for mental health services. Such a consideration

---

fall within the discretionary function exception, and numerous courts have held that such decisions cannot be subjected to review in a tort action under the FTCA. See Cohen, 151 F.3d at 1338 (recognizing that the BOP's decisions concerning classification of prisoners and what institution to place them in involve an element of choice entitled to protection under the discretionary function exception to the FTCA); Norris v. United States, No. 5:10-ct-3026-FL, 2013WL756293, at *6 (E.D.N.C. Feb. 28, 2013)("[T]he decision of an inmate's classification and housing status is within the sole discretion of the BOP."); Patel v. United States, 398 F. App'x 22, 29 (5th Cir. 2010) ("decisions regarding the transfers and classifications of prisoners generally fall within the discretionary function exception"); Calderon v. United States, 123 F.3d 947, 951 (7th Cir. 1997) ("It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy."); Santa-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003) (decisions about classifying inmates or assigning them to a particular unit or institution, or about allocation of correctional staff, fall within the discretionary function exception); Ballester v. United States, No. 1:01-cv-27120JOF, 2006 WL 3544813 (N.D. Ga. 2006) (BOP's decision to place plaintiff in cell with another inmate who subsequently assaulted him fell within discretionary function exception to FTCA); Brown

v. United States, 569 F. Supp. 2d 596, 600 (W.D. Va. 2008) ("the court agrees with the United States that a prison official's decision regarding whether to place an inmate in the general population falls within the discretionary function exception").

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim that housing Plaintiff and Walters in the same cell was negligent.  The conduct at issues falls within the discretionary function exception the FTCA's waiver of sovereign immunity.

**B.   Defendants Story and Carver are entitled to summary judgment on Plaintiff's deliberate indifference claims**

Defendants Story and Carver assert that the Bivens claims against them are due to be dismissed pursuant to 42 U.S.C. § 233(a) which mandates that all claims against members of the Public Health Service based upon inadequate medical care must be brought pursuant to the FTCA (Doc. 75 at 7-8).  Section 233(a) provides in pertinent part:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, **resulting from the performance of medical, surgical, dental, or related functions**, including the conduct of clinical studies or investigation, **by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-**

> **matter against the officer or employee** (or his
> estate) whose act or omission gave rise to the
> claim.

42 U.S.C. § 233(a) (emphases added).   The United States Supreme

Court has concluded that § 233(a) precludes a <u>Bivens</u> action against

United States Public Health Service personnel for constitutional

violations arising out of their official duties because <u>all</u> medical

claims against these types of defendants must be raised pursuant

to the FTCA. <u>Hui v. Castaneda</u>, 559 U.S. 799, 805 (2010).

    Defendant Story attests that she is a registered nurse at

FCC-Coleman and an active commissioned officer in the United States

Public Health Service (Story Declaration at ¶ 1). Defendant Carver

attests that he was a physician at FCC-Coleman from November of

2009 until June of 2013 and during that time, he was also an

officer in the United States Public Health Service (Carver

Declaration at ¶ 1).

    Plaintiff does not contest that the FTCA is the exclusive

remedy against employees of the Public Health Service for claims

related to medical care (Doc. 82 at 10).   Nor does he argue that

Storey and Carver do not fall within the purview of medical

professionals immune from suit under <u>Bivens</u>. <u>Id.</u>   Rather, he

argues that these defendants provided him "'no' care or treatment

(Storey), or no help obtaining alleged prescribed treatment after

such attempts had been made (Defendant Carver)." (Doc. 82 at 10-

11).   In other words, Plaintiff makes the novel argument that

because his claims are based upon these defendants' alleged *failure* to treat his forehead lump (as opposed to their faulty treatment of the lump), § 233(a) cannot apply.   Plaintiff has presented no legitimate basis for concluding that these defendants are not protected by § 233(a).   Indeed, the Plaintiff in Hui alleged that the defendants were deliberately indifferent because of their failure to provide treatment for his cancer.  See Hui, 559 U.S. at 803 (noting that the medical defendants had denied the detainee's requests for a biopsy and other recommended procedures as "elective").

Plaintiff's second amended complaint sufficiently establishes, and there is no genuine dispute, that Storey not only functioned as a nurse at FCC-Coleman, but that Plaintiff's claims against her directly concern her performance of medical and related functions. Likewise, the claims against Carver directly concern his performance of medical functions.   There is no dispute that Story and Carver were members of the Public Health Service at the time they provided care to Plaintiff.   Consequently, § 233(a) applies to provide immunity, and the Bivens claims against Storey and Carver are dismissed pursuant to § 233(a).

   **C.  Defendant Cacho is entitled to summary judgment on Plaintiff's deliberate indifference claim**

In his second amended complaint, Petitioner asserted that he was examined by Defendant Cacho on September 9, 2012 and received pain medication for about a year, but that the medication was

eventually discontinued (Doc. 19 at 10,12).  Petitioner asserts
that he now purchases his own pain medication. Id. at 19. Plaintiff
also argues that Cacho did not "actually treat the physical injury
of the lump (contusion) or have Plaintiff checked to see if an
internal brain injury was the cause of the constant severe
headaches." (Doc. 19 at 10).

Prison officials violate the Eighth Amendment when they act
with deliberate indifference to a plaintiff's health or safety.
Estelle v. Gamble, 429 U.S. 97 (1976).  To state a claim of
deliberate indifference, a plaintiff must allege: (1) a serious
medical need; (2) deliberate indifference to that need by the
defendants; and (3) causation between the defendants' indifference
and the plaintiff's injury. Youmans v. Gagnon, 626 F.3d 557, 563
(11th Cir. 2010).  Plaintiff has failed to establish the first two
of these factors.

### 1. Plaintiff's injury was not an objectively serious medical need

A serious medical need is considered "one that has been
diagnosed by a physician as mandating treatment or one that is so
obvious that even a lay person would easily recognize the necessity
for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr.,
40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other
grounds by Hope v. Pelzer, 536 U.S. 730 (2002) (quotation marks
and citation omitted).  The medical need must be one that, if left

unattended, poses a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

Defendants argue that, Plaintiff cannot establish "a legally cognizable objective serious medical need" because he did not "seek any sort of medical attention until three weeks after Inmate Walters allegedly kicked him in the forehead, and at that visit, ***he failed to mention whatsoever any complaints resulting from that incident.***" (Doc. 75 at 11) (emphasis in original). In support of their assertion that Plaintiff's lump is not a serious medical condition, Defendants provide copies of Plaintiff's medical records during the relevant time period which indicate that he mentioned the lump to a medical provider on a single occasion – more than two months after the alleged incident – and at that time, he denied any pain or headaches associated with the lump (Doc. 75 at 11; Doc. 75-2 at 21). In his Declaration, Defendant Cacho attests that Plaintiff did not mention his head trauma or headaches on either of the medical visits in which he treated Plaintiff for herpes or shoulder pain (Doc. 81-1 at ¶¶ 3, 6).

Plaintiff now asserts that he did indeed bring up the issue of his forehead lump to numerous medical professionals, even prior to the date alleged by Defendants, all of whom declined to offer any treatment other than pain medication or to even make notes of his lump in the record. <u>See</u> Second Amended Complaint (noting that he described the incident with Walters to Defendant Cacho and that

"[i]t was for the totality of all Plaintiff's then described issues that Defendant Cacho prescribed the [pain] medication"; stating that Defendant Storey "actually chose to do nothing after she saw for herself that Plaintiff's injury was real"; stating that Dr. Carver was told about the lump, but "simply followed the arm injury as priority because Plaintiff said it was killing him"; stating that he told non-defendant MLP Ramos "about his forehead injuries," but that "Ramos simply said she would order a cream for the black marks and a scan for Plaintiff's right hand"; stating that he "made several acknowledgments about his forehead injury and the headaches to [non-defendant] Dr. Li," but that Li presumably declined to treat the injury. (Doc. 19 at 4-10).

Plaintiff has not provided the Court with additional medical records or other admissible evidence to support his claim that his injury was serious or that he even brought it to the attention of Defendant Cacho. Generally, a party opposing summary judgment cannot create a question of material fact simply by denying the sworn evidence supporting the moving party's motion. See Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion.").

However, even if Plaintiff's instant assertion that he actually told numerous health care providers about his forehead lump is sufficient to create a question of material fact on that

issue, the assertion does not support a claim that Plaintiff suffered an objectively serious medical condition.    To the contrary, Plaintiff's statements support the opposite conclusion. Given that Plaintiff allegedly told no less than five medical professionals about his forehead lump on different occasions, yet every medical professional declined to order treatment (or indeed in four cases, to even note the lump in the medical record), the seriousness of the lump could not have been "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187.   Moreover, other courts have routinely found that such a lump does not present an Eighth Amendment serious medical need.   See Brock v. Sparkman, 101 F. App'x 430, 431 (5th Cir. 2004) (prisoner who had bumps and bruises from hitting his head on the top bunk did not show cognizable injury); Trejo v. Gomez, No. C-92-4484 EFL, 1996 WL 506910 (N.D. Cal. Aug.16, 1996) (bruises and contusions not a serious medical need); Benitez v. Locastro, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan.29, 2010) (bruises and a laceration not serious medical conditions); Willacy v. County of Brevard, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, failed to assert a serious medical need); Jones v. Furman, Case No. 02-cv-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar.

21, 2007) (injuries, including soreness, pain in and a lump behind his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs and legs, did not constitute the requisite serious medical condition necessary to establish an Eight Amendment deliberate indifference claim); Goldston v. Albany County Sheriff Dep't, Case No. 02 Civ. 1004, 2006 WL 2595194, at *7 (N.D.N.Y. Sept. 11, 2006) ("lumps, bumps, bruises, scratches, minor cuts and temporary pains . . . are not, when considered either alone or together, sufficiently serious for constitutional purposes").

### 2. Defendant Cacho was not deliberately indifferent to Plaintiff's injury

Even assuming *arguendo* that Plaintiff's forehead lump was a sufficiently serious medical condition, Defendant Cacho is entitled to summary judgment on Plaintiff's claim of deliberate indifference.  To demonstrate subjective deliberate indifference, the prisoner must show that the defendant: (1) knew of the risk of serious harm; (2) disregarded that risk; and (3) acted with more than just mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).  In other words, the prisoner must allege that the defendant's response was so inadequate as to constitute an "unnecessary and wanton infliction of pain" and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law[.]" Taylor v.

Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted).

In his second amended complaint, Plaintiff states his claim against Defendant Cacho as follows:

> On or about September 9, 2012, Plaintiff was examined by Defendant Cacho who authorized that Plaintiff receive pain medication that was later cut off for no reason even though the injury is still visible and presented as being a problem which causes headaches and severe discomfort.
>
> Defendant Cacho also did not suggest that anything further be done to actually treat the physical injury of the lump (contusion) or have Plaintiff checked to see if an internal brain injury was the cause of the constant severe headaches.  Defendant Cacho, as a licensed medical practitioner knew that the lump still being present a month later after an initial injury, that was still painful, was a matter that required more than a generic pain medication that was ultimately discontinued.  The fact that he knew Plaintiff was suffering from a visible external injury, and likely internal injury (due to the constant headaches), and still chose to refuse/defer visibly (and internally) needed medical treatment, is tantamount to blatant deliberate indifference.  In addition, having the pain medication discontinued was a direct act that showed Defendant Cacho's deliberate indifference.

(Doc. 19 at 10).  Defendant Cacho attests that he could not have been deliberately indifferent to Plaintiff's head lump because Plaintiff did not mention his head trauma or headaches on either of the medical visits in which he treated Plaintiff for herpes or shoulder pain (Doc. 81-1 at ¶¶ 3, 6).

In support of the motion for summary judgment, Defendant Cacho attached the medical records of Plaintiff's visits.  The records indicate that Plaintiff visited Defendant Cacho on September 6, 2012 for treatment of genital herpes and lower back pain (Doc. 75-2 at 24).  Plaintiff was prescribed Acyclovir for the herpes and naproxen for back pain on that date. Id.  On October 18, 2012, Plaintiff visited Defendant Cacho for an injury to his upper arm. Id. at 18.  Defendant Cacho prescribed amlodipine and hydrochlorothiazide for Plaintiff's hypertension, coal tar shampoo for seborrhea capitis, ranitidine for esophageal reflux, and ibuprofen for pain relating to Plaintiff's shoulder injury (Doc. 75-2 at 17-18).  On October 30, 2015, Defendant Cacho wrote a lower bunk pass for Petitioner's torn bicep. Id at 16.  On November 14, 2012, Plaintiff visited Defendant Cacho complaining of shoulder pain and "2 black spot hematoma."  Defendant Cacho prescribed salsalate (an anti-inflammatory pain medication) and ordered radiology for Plaintiff's shoulder pain. Id. at 15; Doc. 81-1 at ¶ 6.

Defendant Cacho argues that the medical reports from the September 6, 2012 and November 14, 2012 examinations support his attestation that Plaintiff did not inform Cacho of his head lump (Doc. 75 at 11).  Indeed, the medical reports suggest that Plaintiff complained only of herpes and lower back pain at the September 6, 2012 visit and of shoulder pain and a "blank spot

hematoma on his shoulder" at the November visit (Do. 75-2 at 29,
14).   In his response, Plaintiff asserts that he did report the
head lump at the September visit and that Cacho examined the lump,
but failed to note it in the reports.[3]

---

[3] In his response to Defendants' motion for summary judgment,
Plaintiff alters his claim against Defendant Cacho to assert:

> However, Plaintiff, now declares under the
> penalty of perjury, that Defendant Cacho
> didn't prescribe the pain-reliever Naproxen
> for pain in his lower back.  The fact is,
> Plaintiff, factually described having
> headaches and consistent head pains that was
> bothering him.  Plaintiff also told Defendant
> Cacho about the incident with Walters, and the
> injuries relating to the fall he had
> experienced coming out of the shower in SHU.
>
> It was for the totality of all Plaintiff's
> then described issues that Defendant Cacho
> prescribed the medication.
>
> However, following that first 30 days,
> Plaintiff began to have problems getting the
> medication on a regular basis when he would
> submit his refill slips.  It was then that
> Plaintiff would return to medical seeking some
> form of aid or assistance for the same
> problems he wasn't being treated for, and then
> wasn't regularly being given the pain
> medications for either.
>
> Plaintiff's constant pleas with the Defendants
> involved with these same matters including
> Defendant Cacho, ultimately ended with the
> medications being silently discontinued.

(Doc. 82 at 5-6).  To the extent Plaintiff now raises new claims
or an entirely different factual scenario than was set forth in
his second amended complaint, such cannot be raised for the first
time in response to a motion for summary judgment. See Cutrera v.
Bd. of Supervisors, 429 F.3d 108, 114 (5th Cir. 2005) ("A claim
which is not raised in the complaint but, rather, is raised only

Even if, as Plaintiff now states in his response, Defendant Cacho examined Plaintiff's head lump in September of 2012 and prescribed pain medication "for the totality of all Plaintiff's then described issues," Cacho is entitled to summary judgment on this claim.  Although Plaintiff preferred more tests to determine whether he had a brain injury, prisoner is not entitled to the treatment of his choice.  Where, as here, a prisoner received medical treatment and care but alleges that he should have received different treatment or care, the conduct does not constitute deliberate indifference.  See Hamm v. Dekalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); Jackson v. Fair, 846 F.2d 811, 817

---

in response to a motion for summary judgment is not properly before the Court." (citing Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990))); Gilmour v. Gates, McDonald and Co., 382 F.3d 1312 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.").

Plaintiff does not explain why he did not allege these new facts in his second amended complaint, or seek leave from the Court to file a third amended complaint to clarify his claims against Defendant Cacho.  To the extent Plaintiff believes that he can defeat summary judgment merely by changing his allegations or by denying Defendants' evidence, he is mistaken.  A party opposing summary judgment cannot create a question of material fact simply by denying the sworn evidence supporting the moving party's motion. See Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion.").  Accordingly, this Court will consider only the claims raised against Defendant Cacho in Plaintiff's second amended complaint.

(1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."). That Plaintiff would have preferred to "see a specialist and have a CT scan done to check for internal damage," is merely a disagreement with the medical care he received while incarcerated at Coleman (Doc. 19 at 10). At most, Defendant Cacho's failure to order additional tests on Plaintiff's lump was mere negligence which is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Finally, Plaintiff's claim that deliberate indifference is demonstrated by the discontinuation of his pain medication is contradicted by the record. First, Plaintiff states in his second amended complaint that he now purchases his own medication for pain (Doc. 19 at 12). He does not argue that he is unable to pay for pain medication. Nor does he allege that he was denied pain medication due to any inability to pay or that paying for his pain medication acts as a functional denial of medical care by requiring him to obtain either medical care or basic necessities. While medical care cannot be conditioned on an inmate's ability to pay, charging inmates for medical care is not *per se* unconstitutional. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245

(1983)(recognizing that a hospital or governmental entity has the right to recover from a detainee the cost of the medical services provided to him); Morris v. Lovingston, 739 f.3d 740, 747 (5th Cir. 2014)("no general constitutional right to free health care"); Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997)("If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs."); Poole v. Isaacs, 703 F.3d 1024, 1026 (7th Cir. 2012)(the "Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care").

Next, the medical records filed by Defendants show that Plaintiff was given a 180-day prescription for Naproxen on September 6, 2012 (Doc. 75-2 at 24) and a prescription for ibuprofen on October 18, 2012. Id. at 18. Plaintiff was provided with the pain reliever Salsalate on November 14, 2012 (Doc. 81-1 at 3). On November 29, 2012, Plaintiff was advised to stop taking the Naproxen and to choose Tylenol instead due to right shoulder lesions. Plaintiff was once again prescribed a 180-day supply of Naproxen on July 30, 2013. Id. at 28. Other than now asserting that he had difficulty actually filling his prescriptions (which would indicate, at most, negligence on the part of the prison medical staff), Plaintiff has presented no admissible evidence to

refute   Defendants'   evidence   that   Plaintiff   received   pain
medication.

Because   the   pleadings   and   record   evidence   indicate   that
Plaintiff's forehead lump did not constitute a "serious medical
condition" and that Plaintiff received medical care for the lump,
Defendant Cacho is entitled to summary judgment on Plaintiff's
claim of deliberate indifference.

**V.**   **Conclusion**

In accordance with the foregoing, it is hereby **ORDERED:**

1.   Defendants' Motion for Summary Judgment (Doc. 75) is
**GRANTED.**

2.   Plaintiff's Motion for Summary Judgment (Doc. 74) is
**DENIED.**

3.   With no remaining defendants or claims, the **Clerk of
Court** is directed to terminate any pending motions, close this
case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on this    2nd    day
of December, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: James R. Young
Counsel of Record